UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>HUY CHI LUONG,<br><br>Movant. | No.  2:96-cr-0350 WBS AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Movant is a federal prisoner proceeding through counsel on a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  ECF No. 1029.  He asserts that trial counsel rendered ineffective assistance of counsel with respect to his venue transfer rights under Federal Rules of Criminal Procedure 20 and 21 and that his Sixth Amendment speedy trial rights were violated.  Id.  Respondent opposes the motion.  ECF No. 1041.

I.    Background

Movant was originally indicted on August 2, 1996.  ECF No. 1.  A superseding indictment was filed on July 16, 1998, charging movant and 15 other defendants with a combined 130 counts of money laundering and criminal forfeiture.  ECF No. 98.  Of those counts, movant was charged with eleven counts of laundering monetary instruments in violation of 18 USC § 1956(a)(1)(B)(i) and (ii) (Counts 64-67, 71-76, and 86); eight counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 USC § 1957(a) (Counts 68,

1

69, and 77-82); one count of conspiracy to launder monetary instruments in violation of 18 USC § 1965(h) (Count 70); and two counts of criminal forfeiture in violation of 18 U.S.C. § 982 (Counts 124 and 125).  Id.  An agreement was made that the proceedings in this case would trail those in a related case proceeding in the United States District Court for the Northern District of California, United States v. Luong (Luong I), No. 4:96-cr-0094 MHP (N.D. Cal.).  ECF No. 65 at 1.

The indictment in Luong I was returned on April 9, 1996, and charged movant and twenty-three other individuals with RICO violations, RICO conspiracy, Hobbs Act robbery, and distribution of and conspiracy to distribute heroin.  ECF No. 58 at 1-2.  Movant and two other defendants in this case were also indicted in Luong I.[1]  Id. at 2.  On June 22, 2000, a jury returned a guilty verdict in the Northern District and movant was sentenced to a total of 300 months imprisonment on August 9, 2001.  ECF No. 225 at 2; Luong I, ECF Nos. 1260, 1524.  Movant appealed to the Ninth Circuit.  Luong I, ECF No. 1531.

On July 25, 2001, Clyde Blackmon, movant's counsel in this case and in Luong I, was permitted to withdraw as counsel in this case and Michael Aye was appointed on August 15, 2001.[2]  ECF Nos. 331, 340.  On November 6, 2002, John Balazs represented that he had come onto the case two weeks prior because Mr. Aye had a conflict.[3]  ECF No. 433; ECF No. 436 at 7 (Transcript at 2:9-11).

On July 26, 2006, the government identified the April 20, 1995[4] robbery of Zenon Computers in City of Industry, California and May 16, 1995 robbery of Centon Electronics in Irvine, California, as the specified unlawful activity in Counts 64-82 and 86 of the indictment, and gave notice that it intended to introduce evidence of the March 15, 1996 robbery of Ace Micro in San Diego, California under Federal Rule of Evidence 404(b).  ECF No. 597.

---

[1]  Movant was not charged in the heroin distribution and conspiracy counts.  ECF No. 58 at 2 n.1.
[2]  From the beginning of this case, movant was represented by Mr. Blackmon's firm, Blackmon, Drozd, & Snellings, which later became Blackmon & Snellings.  ECF Nos. 58, 78.  On March 21, 2001, Mr. Blackmon was permitted to withdraw as retained counsel but continued to represent movant as appointed counsel until his withdrawal on July 25, 2001.  ECF No. 268.
[3]  Mr. Balazs is movant's last attorney of record in his criminal proceedings.
[4]  The Zenon robbery was erroneously identified as taking place in 1997.  ECF No. 597 at 2.

Trial on the charges against movant and one of his co-defendants began on September 6, 2006, and on October 4, 2006, the jury found movant guilty on all counts.  ECF No. 621, 659.  On April 23, 2007, movant was sentenced to an aggregate term of  480 months in prison.  ECF No. 719.  His sentence consisted of consecutive 240-month terms for Counts 64 and 70; 240-month terms on Counts 65-67, 72-76, and 86, to be served concurrently with each other and the terms imposed on Counts 64 and 70; and 120-month terms on Counts 68, 69, and 77-82, to be served concurrently with each other and the terms imposed on all other counts.  Id.  On April 30, 2007, the court addressed the inadvertent exclusion of Count 71 from sentencing and declined to sentence defendant on Count 71.  ECF No. 720.  Judgment was entered on May 2, 2007 (ECF No. 722), and movant appealed to the Ninth Circuit (ECF No. 716).

On October 1, 2009, movant was resentenced in Luong I, after the Ninth Circuit affirmed his conviction but remanded the case for resentencing in light of the decision in United States v. Booker, 543 U.S. 220 (2005).  See United States v. Luong, 215 F. App'x 639 (9th Cir. 2006); ECF No. 1041-2 at 80-82.  On resentencing, movant received an aggregate term of 300 months in prison.  ECF No. 1041-2 at 82.  His sentence consisted of a 120-month term for Count 1, to be served consecutively to a 120-month term for Count 2; 40-month terms on Counts 10 and 11, to be served concurrently with each other and the terms imposed on Counts 1 and 2; and a 60-month term on Counts 60, to be served consecutively to the terms imposed on all other counts.  Id.  The sentences for Counts 1, 2, 10, and 11 were to be served concurrent to the sentence imposed in this case, while the sentence for Count 60 was to be served consecutively.  Id.  The Northern District judge noted that in the event the sentence in this case were

> reduced or remanded that the sentence imposed before this court on counts 1, 2, 10 and 11 be served concurrently only to the extent that sentence is at least 240 months.  If it less that [sic] 240 months, the excess of this sentence shall run consecutively and the sentence on count 12 shall always run consecutive to the USDC EDCA sentence and this sentence.

Id.

On February 15, 2012, the Ninth Circuit affirmed the convictions in this case but vacated the sentence and remanded the case for resentencing.  ECF No. 802.  The Ninth Circuit found that

the district judge may have relied on facts of crimes for which movant was not involved because of the mention of beatings when there was no mention of beatings in the record.  Id. at 5.  The Ninth Circuit also advised that the district court "consider all circumstances and subsequent developments on resentencing, including Luong's sentence on RICO charges in the Northern District of California."  Id.

On September 3, 2013, movant was sentenced to an aggregate term of 360 months in prison.  ECF No. 843.  His sentence consisted of a 240-month term for Count 64, to be served consecutively to a 120-month term for Count 70; 240-month terms on Counts 65-67, 71-76, and 86, to be served concurrently with each other and the terms imposed on Counts 64 and 70; and 120-month terms on Counts 68, 69, and 77-82, to be served concurrently with each other and the terms imposed on all other counts.  Id. at 3.  The 360-month sentence was to run concurrent to the 240-month sentence imposed on Counts 1, 2, 10, and 11 in Luong I, while the 60-month sentence imposed on Count 12 in Luong I was to required to be served consecutively to the 360-month term imposed in this case.  Id.  At sentencing, the district judge stated that it was his intention that movant serve an additional ten years to the sentence imposed in Luong I because it was "the very minimum required in order to satisfy the interests of justice."  ECF No. 853 at 19-20 (Transcript at 17:1-4, 18:3-6).  Movant appealed the sentence.  ECF No. 841.

On March 4, 2016, the Ninth Circuit affirmed the sentence, finding that though the 360-month sentence was "a significant upward departure" from the Guideline range, the reasons for the departure had been thoroughly articulated.  ECF No. 1023 at 5.  The Ninth Circuit found that

> [t]he district court recognized that the present case was a money laundering case, but noted that it was necessary to take into consideration the circumstances of the underlying crimes that formed the basis of the money laundering counts.  The district judge also found that the Guidelines did not adequately take into consideration the heinous nature of the underlying robberies.  Although the underlying robberies were used to calculate appellant's criminal history under the Guidelines in the Northern District case, the nature of those crimes was not a part of the Northern District Court's sentencing decision.

Id. at 5-6.

////

4

1  II.      Legal Standard for § 2255 Motions

2          A sentencing court may "vacate, set aside or correct the sentence" of a federal prisoner if

3  it concludes that "the sentence was imposed in violation of the Constitution or laws of the United

4  States." 28 U.S.C. § 2255(a).  Claims for relief under § 2255 must be based on a constitutional or

5  jurisdictional error, "a fundamental defect which inherently results in a complete miscarriage of

6  justice," or a proceeding "inconsistent with the rudimentary demands of fair procedure." United

7  States v. Timmreck, 441 U.S. 780, 783 (1979) (quoting Hill v. United States, 368 U.S. 424, 428

8  (1962)).  Both the grounds for relief and the scope of the remedy in a § 2255 proceeding are

9  identical to those available to state prisoners under 28 U.S.C. § 2254, the federal habeas corpus

10  statute.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  To warrant relief, a movant must

11  demonstrate the existence of an error which "had a substantial and injurious effect or influence"

12  on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United

13  States, 328 U.S. 750, 776 (1946)); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th

14  Cir. 2003) (Brecht standard applies to habeas cases brought under § 2255 just as it does to those

15  under § 2254).

16          A court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the

17  files and records of the case conclusively show that the prisoner is entitled to no relief."  28

18  U.S.C. § 2255(b).  In determining whether a hearing is required, "[t]he standard essentially is

19  whether the movant has made specific factual allegations that, if true, state a claim on which

20  relief could be granted." United States v. Withers, 638 F.3d 1055, 1062 (9th Cir. 2011)

21  (alteration in original) (quoting United States v. Schaflander, 743 f.2d 714, 717 (9th Cir. 1984)).

22  However, no evidentiary hearing is needed "if [movant's] allegations, 'when viewed against the

23  record, do not state a claim for relief or are so palpably incredible or patently frivolous as to

24  warrant summary dismissal.'" United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003)

25  (quoting Schaflander, 743 F.2d at 717).  "Where a prisoner's motion presents no more than

26  conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is

27  not required." United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986) (citation omitted).

28  ////

5

III.     Ineffective Assistance of Counsel

The two prong Strickland standard governing ineffective assistance of counsel claims requires petitioner to establish (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Harrington v. Richter, 562 U.S. 86, 105 (2011) (citing Strickland, 466 U.S. at 690).  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result."  Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Richter, 562 U.S. at 112).  The court "do[es] not have to evaluate both prongs of the test if the defendant fails to establish one."  Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997) (citing Strickland, 466 U.S. at 697).

A.     Transfer Under Rule 21

Movant argues that trial counsel's conduct fell below an objective standard of reasonableness when they did not (1) advise him of his right to seek a transfer under Rule 21(b), (2) advise him of the reasons for submitting such a motion, and (3) move for a transfer.  ECF No. 1029-1 at 16.  Movant was prejudiced by this failure because he was required to endure consecutive federal trials, the time it took to resolve the cases put his liberty in jeopardy for an unreasonably long period, and he ultimately received a sentence ten years beyond what he would have received had the case been transferred to the Northern District.  Id. at 19.  Respondent opposes the motion and argues that trial counsel's conduct was well within the range of competent representation because a Rule 21(b) motion would have been meritless, and that movant has not demonstrated prejudice because he has not provided any evidence that the failure to transfer venue affected the fairness of his trial and his claim that he would have had a reduced sentence is speculative.  ECF No. 1041 at 18-22.

6

i.    Legal Standard

Under Federal Rule of Criminal Procedure 21(b),[5] the court may, on defendant's motion, "transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  In Platt v. Minnesota Mining & Manufacturing Co., the United States Supreme Court cited with approval the following list of factors that the district court should consider when deciding whether to transfer a case under Rule 21(b):

> "(1) location of . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

376 U.S. 240, 243-44 (1964) (citation omitted); United States v. Testa, 548 F.2d 847, 856-57 (9th Cir. 1977) (citing Platt factors with approval).  The defendant carries "the burden of demonstrating his need for transfer," Testa, 548 F.2d at 857 (citation omitted), and it is up to the court "to try to strike a balance and determine which factors are of greatest importance," as no one factor is dispositive, United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2nd Cir. 1990) (citation omitted).

"While Rule 21(b) contemplates minimization of inconvenience to the defense, it has been recognized that some degree of inconvenience is inevitable, and that the government's inconvenience must be considered as well." Testa, 548 F.2d at 857.  Moreover, "[w]here, as here, a defendant is one of many defendants being tried together, the moving defendant's convenience must outweigh the presumption that properly joined defendants ought to be tried together." United States v. Napoli, No. C 10-0642 CRB, 2011 WL 1303571, at *1, 2011 U.S. Dist. LEXIS 158887, at *4 (N.D. Cal. Apr. 5, 2011) (citing Zafiro v. United States, 506 U.S. 534, 537 (1993)); Zafiro, 506 U.S. at 537 ("There is a preference in the federal system for joint trials of defendants

---

[5]  While the § 2255 motion does not specify which subsection of Rule 21 a transfer should have been sought under, movant clarifies in his reply that his arguments were based upon subsection (b).  ECF No. 1042 at 1.

1  who are indicted together."); <u>Testa</u>, 548 F.2d at 857 (affirming denial of Rule 21(b) transfer

2  because defendant failed to demonstrate his need for transfer and further noting a transfer "would

3  have severed the two defendants' trials").

4       ii. <u>Objective Unreasonableness</u>

5    In arguing that it was objectively unreasonable for counsel to not file a Rule 21(b) motion,

6  movant does not directly address the ten <u>Platt</u> factors to demonstrate the merit of such a motion,

7  or allege any facts that would indicate an evidentiary hearing is necessary on the issue.  <u>See</u> <u>Quan</u>,

8  789 F.2d at 715 (no evidentiary hearing required "[w]here a prisoner's motion presents no more

9  than conclusory allegations, unsupported by facts and refuted by the record").  Instead, he argues

10 that "the interest of justice and convenience weighed heavily in [his] favor to transfer the case"

11 because the Northern District case was unusual, complex, and expected to take years to complete

12 and the Eastern District case was directly related to the Northern District case, included less

13 severe offenses, and could have been consolidated with the Northern District case.  ECF No.

14 1029-1 at 14.  Movant also argues that prompt administration of justice and speedy trial policies

15 favored transfer because the parties were aware that the Eastern District case would have to be

16 put on hold while the Northern District case proceeded and would itself take a significant amount

17 of time to complete, leaving movant in jeopardy for a significant amount of time if the case were

18 not transferred.  <u>Id.</u>  Finally, he argues that defending against successive trials was an undue

19 hardship due to the expense and the undue anxiety and embarrassment that resulted.  <u>Id.</u> at 15.

20   Movant fails to allege when counsel should have moved for a transfer under Rule 21(b).

21 To the extent he is attempting to argue that the Eastern District charges should have been

22 transferred to the Northern District after the trial there concluded, so that he could plead guilty in

23 the Northern District and be sentenced for all offenses together, that is not the purpose of Rule

24 21(b).  Rule 21 is titled "Transfer for *Trial*," and subsection (b) requires the court to consider not

25 only the convenience of the parties, but also that of the witnesses and any victim.  (Emphasis

26 added).  It is therefore clear that Rule 21(b)'s purpose is to provide a convenient forum for trial,

27 <u>see</u> 2 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 345 (4th ed.)

28 ("the purpose of Rule 21(b) is to provide for trial in a convenient forum"), and it is not objectively

1    unreasonable that counsel did not seek a Rule 21(b) transfer for purposes of a guilty plea.

2        To the extent movant is arguing that the Eastern District charges should have been

3    transferred to the Northern District for trial, the reasons he cites as grounds for a transfer—

4    judicial economy, avoiding consecutive trials and the associated expense, and being placed in

5    extended jeopardy—would apply only to a transfer occurring sufficiently in advance of the

6    Northern District trial that there would be potential for a consolidated trial.  Because there would

7    have been even less cause to transfer the matter under Rule 21(b) once the trial commenced, the

8    court will weigh the <u>Platt</u> factors based on the circumstances that existed prior to movant's trial in

9    the Northern District.

10                           a.   Location of Defendant

11        Movant does not address this factor.  However, the record reflects that prior to his

12    conviction in the Northern District case, movant was living in Elk Grove, which is located in

13    Sacramento County.  <u>See</u> ECF No. 741 at 9 (movant not in custody with residence in Elk Grove);

14    ECF No. 1029-2 at 42 (movant was incarcerated after being found guilty).  This factor would

15    have therefore weighed against a transfer.

16                          b.   Location of Possible Witnesses

17        Movant is silent as to the convenience of the Northern District for any witnesses that were

18    contemplated or ultimately called and therefore fails to demonstrate that this factor would have

19    favored transfer.  Moreover, in reviewing the testimony of witnesses that were actually called,

20    while a number of witnesses in the case were located in Southern California, which was a neutral

21    location, a significant number of witnesses were located in Sacramento.  <u>See</u> ECF Nos. 756-60,

22    764-65, 767-70.  The record therefore demonstrates that this factor weighed strongly against

23    transfer.

24                             c.   Location of Events

25        Movant does not address this factor.  However, the superseding indictment alleged that the

26    money laundering activities for which movant was charged took place in Sacramento and

27    southern California.  ECF No. 98 at 32-40, 43-44.  This factor therefore would have weighed

28    against transfer.

9

1

#### d. Location of Documents and Records

2    The location of documents and records appears to be neutral.  Though it appears likely

3  that many records and documents would have been located in Sacramento due to the money

4  laundering activities that took place there, there was also an expectation that there would be

5  significant reliance on the discovery produced in the Northern District case.  See ECF No. 58 at

6  3-4 (first status report discussing expectation that discovery would be the same as that in Northern

7  District).  While the various status reports demonstrate that the documentary evidence was

8  extensive, the record reveals that though the bulk of discovery was lodged with a document

9  service in San Francisco (ECF No. 179 at 3), movant's counsel was provided a copy of the

10  discovery produced specific to this case and counsel for one of his co-defendants maintained a

11  copy of the Northern District discovery in his office in Sacramento, which he made available to

12  the other defense attorneys in the case (ECF No. 247; ECF No. 425 at 9 (Transcript at 7:10-18)).

13

#### e. Disruption to Defendant's Business

14    Though movant does not address this factor, exhibits to the motion reveal that movant

15  worked as a manager at Vinh Phat Market in Sacramento up until his conviction in the Northern

16  District.  ECF No. 1029-2 at 42.  Accordingly, this factor would have weighed against a transfer.

17

#### f. Expense to the Parties

18    Movant argues generally that defending against successive trials is expensive.  However, a

19  transfer of the Eastern District charges would not have guaranteed that movant would have had a

20  consolidated trial in the Northern District.  The Federal Rules of Criminal Procedure provide that

21  "[t]he court may order that separate cases be tried together as though brought in a single

22  indictment or information if all offenses and all defendants could have been joined in a single

23  indictment or information."  Fed. R. Crim. P. 13.  Under the rules, offenses may be joined against

24  a defendant when they "are of the same or similar character, or are based on the same act or

25  transaction, or are connected with or constitute parts of a common scheme or plan," and

26  defendants may be joined where "they are alleged to have participated in the same act or

27  transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed.

28  R. Crim. P. 8.  "But Rule 14 recognizes that joinder, even when proper under Rule 8(b), may

1    prejudice either a defendant or the Government." Zafiro, 506 U.S. at 538.

2            Movant makes no arguments and provides no evidence demonstrating that the Eastern

3    District charges would have been consolidated with the Northern District charges had a transfer

4    been granted.  Assuming that trying the Eastern District charges with the Northern District

5    charges would have been appropriate, the numerous motions to sever that were filed in the

6    Northern District case support an inference that the other defendants would have objected to the

7    charges being joined.  See Luong I, ECF Nos. 620, 622-25, 629, 630, 634, 636.  Given the "wide

8    discretion" a trial court has in ordering consolidation, Williams v. United States, 265 F.2d 214,

9    215 (9th Cir. 1959) (citation omitted), there is no way to know whether the Northern District

10   court would have consolidated the two trials.  Though movant points to a transcript of the January

11   19, 2001 hearing in the Northern District as evidence of that "the Northern District may have

12   been ready, willing, and able to address the money laundering counts" (ECF No. 1029-1 at 14),

13   that hearing took place after the conclusion of the Northern District trial and provides no guidance

14   as to what the court would have done in regards to consolidating the cases for trial (see ECF No.

15   1029-2 at 3-6).  Moreover, even if trial were consolidated, movant makes no more than

16   conclusory assertions that his expenses would have been reduced.

17           Assuming that having the charges consolidated for one trial would have resulted in at least

18   some cost savings for movant, he fails to specify or provide evidence of how his expenses would

19   have been reduced, particularly since movant was represented by the same counsel in both cases

20   until shortly before his sentencing in the Northern District.  While it is plain from the record that

21   there was some overlap in issues litigated prior to trial (see, e.g., ECF No. 300 (motion to find

22   movant was not collaterally estopped from relitigating admissibility of wire intercepts); ECF No.

23   446 (motion to suppress wiretap evidence and for reconsideration)), it is also clear that there were

24   issues unique to the Eastern District charges that would likely have been raised regardless of

25   venue (see, e.g., ECF No. 447 (motion to dismiss counts as multiplicitous); ECF No. 475 (joinder

26   in motions to dismiss counts and to suppress evidence and return property); ECF No. 538 (motion

27   to dismiss forfeiture count)).  Similarly, movant fails to identify or allege any overlap in evidence

28   or witnesses presented at trial to demonstrate that a consolidated trial would have prevented

11

1    duplicated efforts and expenses rather than simply resulting in a longer trial.  Finally, since

2    movant was only one of many defendants in this case, if his charges were severed and a transfer

3    were granted, the government would have had to incur additional expenses related to trying the

4    money laundering case in two separate districts.

5          If the charges in this case were transferred to the Northern District without consolidation,

6    this factor would have weighed against transfer as there would have been no savings—and

7    possibly increased expense due to movant and counsel's location—to movant and greater expense

8    to the government.  However, assuming for purposes of this analysis that consolidation would

9    have been permitted, the undersigned will assume this factor weighed at least slightly in favor of

10    transfer.

11                 g.  Location of Counsel

12          Counsel representing movant in this case was located in Sacramento, and counsel's

13    address of record demonstrates that their offices were located within walking distance of the

14    Eastern District courthouse.[6]  See ECF No. 58 at 1 (address for Blackmon, Drozd & Snellings);

15    ECF No. 79 at 1 (address for Blackmon & Snellings, LLP).  This factor therefore weighs against

16    transfer.

17                 h.  Relative Accessibility

18          Though both the Eastern and Northern District courts are located near major airports,

19    making both districts easily accessible to those witnesses travelling from southern California,

20    movant and a significant number of witnesses were in Sacramento, making the Eastern District

21    more accessible on balance.  The Eastern District courthouse was similarly more accessible to the

22    government's and movant's attorneys, given the close proximity of the Eastern District

23    courthouse to their offices.  Accordingly, this factor weighs against transfer.

24    ////

25    ////

26

27    [6]  Movant's counsel subsequent to his trial in the Northern District were also located in
Sacramento and with offices within walking distance of this court.  See ECF No. 405 at 1

28    (address for Michael J. Aye); ECF No. 469 at 1 (address for John Balazs).

1

i.   Docket Conditions

2      While the Eastern District unquestionably has one of the heaviest caseloads in the country,

3   movant does not provide any evidence regarding comparative docket conditions for the two

4   courts at the relevant times.  However, the Federal Court Management Statistics published by the

5   Administrative Office of the Courts provide some insight on the matter.  The report shows that

6   between the initiation of this case and movant's trial in the Northern District, this district had only

7   half the district judges and nearly twice the criminal felony filings of the Northern District.[7]

8   Nonetheless, the average time from filing to disposition in criminal felony cases in this district

9   was at all times lower than that of the Northern District for each of the twelve-month periods

10  reflected in the report.  This factor therefore weighs slightly against transfer.

11

j.   Special Considerations

12      Though not explicitly categorized as such, movant's arguments regarding judicial

13  economy, avoiding consecutive trials, and being placed in extended jeopardy fall within the

14  category of special considerations.[8]  However, as with the expense factor, these some of these

15  considerations weigh in movant's favor only if the Eastern District charges were not merely

16  transferred to the Northern District but also consolidated with the charges in Luong I for trial.

17  Assuming that there would have been a consolidated trial upon transfer, the undersigned finds

18  that movant's interest in avoiding consecutive trials and being placed in extended jeopardy

19  weighed in favor of transfer, though only slightly, since the charges were properly brought in this

20  district and movant had no right to have the charges consolidated.

21      With respect to movant's argument that judicial economy favored transferring the charges,

22  while this may appear true when movant's charges are considered in isolation, the court cannot

23  _____

24  [7] See United States Courts, District Courts – Combined Civil and Criminal Federal Court
    Management Statistics, 66-67 (Sept. 30, 2001),

25  https://www.uscourts.gov/sites/default/files/statistics_import_dir/District_FCMS_Sep_2001.pdf
    [https://perma.cc/N24M-BLDX].  The court takes judicial notice of these facts.  See Fed. R. Evid.

26  201(b)(2).
    [8] To the extent movant's argument implies that failure to transfer the cases subjected him to

27  double jeopardy, he has not raised a double jeopardy claim and the Ninth Circuit previously
    denied his interlocutory appeal on the ground that he "failed to raise a colorable double jeopardy

28  claim."  ECF No. 533 at 5; United States v. Luong, 126 F. App'x 373, 374 (9th Cir. 2005).

1  find this factor weighed in favor of transfer when the case is viewed as a whole.  Even if

2  movant's charges were transferred, the charges against his co-defendants would have remained in

3  this court.  As already addressed above, while there appears to have been some overlap in issues,

4  movant and his co-defendants filed and joined together in a number of pretrial motions that

5  appear to have been unique to the Eastern District charges.  Transferring movant's charges would

6  have resulted in two different courts having to consider those motions and conduct trials on the

7  money laundering charges.  Movant has not pointed to any facts showing that, when considered in

8  the context of the case as a whole, transferring his charges would have resulted in the

9  consumption of fewer, rather than more, judicial resources.  Accordingly, this factor weighs

10 against transfer.

11              k.  Conclusion

12         For the reasons explained above, the court finds that seven of the ten Platt factors—

13 location of defendant, location of witnesses, location of events, disruption to defendant's

14 business, location of counsel, relative accessibility, and docket conditions—weighed against

15 transfer at the relevant time.  The expense to the parties also weighed against transfer unless the

16 charges in this case were consolidated with those in Luong I for trial, in which case that factor

17 weighed in favor of transfer.  Further assuming consolidation of the charges, the location of

18 defendant and counsel, as well as disruption to defendant's business, would have been neutral

19 because movant was already being tried in the Northern District and was represented by the same

20 attorneys in both cases.  The location of documents and records was also a neutral factor.  Finally,

21 the additional considerations identified by movant appear to balance each out to make this factor

22 neutral.

23         In light of the number of factors that were neutral or weighed against transfer—

24 particularly the location of the witnesses—and movant's failure to specifically address any factor

25 or make more than a conclusory assertion that his expense and other considerations weighed

26 heavily in favor of transfer, movant has failed to show that he had sufficient grounds to support a

27 motion for a transfer under Rule 21(b), let alone that such a motion would have been granted.

28 This is particularly true when the court considers that transferring movant's charges would have

14

resulted in the severance of movant's charges from those of his co-defendants in this case who were facing similar charges.[9]  See Testa, 548 F.2d at 857 (affirming denial of Rule 21(b) transfer because defendant failed to demonstrate his need for transfer and further noting a transfer "would have severed the two defendants' trials").  Movant therefore fails to show that counsel was objectively unreasonable for not seeking to transfer his Eastern District charges to the Northern District.

iii.   <u>Prejudice</u>

Because movant has not established a substantial likelihood that a Rule 21(b) motion would have been granted had one been filed, he cannot demonstrate prejudice based on the failure to file such a motion.  Nor has he established that in the event such a motion was granted his charges would have also been consolidated for trial.  Even assuming that a Rule 21(b) motion would have been granted and his charges consolidated, movant still fails to establish prejudice because he points to no evidence that the failure to obtain a transfer had any effect on the fairness of his trial or its outcome, and he makes only speculative arguments that his sentence was increased due to the failure to obtain a transfer.

Movant points to the Eastern District Presentence Investigation Report and the transcript of the January 19, 2001 hearing in Luong I as evidence that his sentence would have been ten years less had he been sentenced in the Northern District.  ECF No. 1029-1 at 17-18.  The presentence report stated that "[i]t appears this matter is closely related to the Northern District of California case, and had the defendant been sentenced for all conduct at the same time, it is unlikely he would have received a longer sentence" and recommended the sentence in this case run concurrent to the Northern District sentence.  ECF No. 826 at 12.  The transcript reflects a brief exchange between the Northern District judge and prosecutor regarding movant's offense level:

///

---

[9]  While defendants in this case were ultimately split into two groups for trial and only one trial took place, movant was tried with one of his co-defendants and he and his co-defendants joined in a number of pretrial motions.

Ms. Lee: I know if the charges of money laundering were brought here in this indictment I have a feeling they all merge together because the robberies really drive the offense level up, and we're at multiple counts now where the units are such that we're over the limit, and I don't think any additional conduct would affect the ultimate offense level.

The Court: So what's the point then?

ECF No. 1029-2 at 6.

Though both the probation officer's speculation as to movant's sentence were he to be sentenced in the Northern District and the brief exchange between the Judge Patel and the Northern District prosecutor demonstrate that it is conceivable that movant would not have received a sentence of more than twenty-five years had he been sentenced on all charges in the Northern District, they do not establish a substantial likelihood of a different result. See Cullen v. Pinholster, 563 U.S. at 189 (quoting Richter, 562 U.S. at 112). Any arguments regarding what sentence Judge Patel would have imposed had movant appeared before her for sentencing on all charges, with all the additional information and considerations that the money laundering charges would have brought with them, are pure speculation and therefore do not establish prejudice.

B.     Transfer Under Rule 20

Movant argues that his attorneys rendered ineffective assistance of counsel by failing to inform him that he could plead guilty to the Eastern District charges and consent to have his case transferred to the Northern District for sentencing. ECF No. 1029-1 at 19-20. He argues that, between June 22, 2000, and August 9, 2001, when he was awaiting sentencing in the Northern District, he would have pled guilty to the Eastern District charges and agreed to a transfer had he been informed of the option and that the United States Attorneys in both districts would likely have approved of the transfer because there were strong policy reasons to support a transfer, the Northern District had a favorable view of transfer, and the United States Attorney for the Eastern District had consented to a Rule 20 transfer for one of movant's codefendants. Id. at 19-22. As a result of the failure to obtain a Rule 20 transfer, plaintiff remained in jeopardy for an additional five to six years while defending against the Eastern District charges and ended up with an additional ten years added to his sentence. Id. at 22-23. Respondent argues that movant's claim

16

that he would have pled guilty is contradicted by his extensive pretrial litigation and that there is

no evidence that both United States Attorneys would have consented to the transfer.  ECF No.

1041 at 22-24.

Federal Rule of Criminal Procedure 20(a) provides that

> [a] prosecution may be transferred from the district where the indictment or information is pending, or from which a warrant on a complaint has been issued, to the district where the defendant is arrested, held, or present if:
>
> (1) the defendant states in writing a wish to plead guilty or nolo contendere and to waive trial in the district where the indictment, information, or complaint is pending, consents in writing to the court's disposing of the case in the transferee district, and files the statement in the transferee district; and
>
> (2) the United States attorneys in both districts approve the transfer in writing.

Though movant argues through counsel that he would have pled guilty and consented to a

transfer had he been properly counseled, his declaration is devoid of any such statement.  Instead,

he avers only that counsel never discussed or explained Rule 20 to him or the possibility of

transferring his money laundering charges to the Northern District.  See ECF No. 1029-2 at 65.

However, even assuming that movant would be willing to swear under penalty of perjury that he

would have pled guilty and consented to a transfer, "[a]pproval of a defendant's request for

transfer by the United States Attorney for each district is a condition to a transfer under Rule 20,"

United States v. French, 787 F.2d 1381, 1384 (9th Cir. 1986), and there is no evidence that either,

let alone both, United States Attorneys would have approved the transfer.

Movant points to an excerpted transcript from a hearing in the Northern District as

evidence that the United States Attorney for the Northern District would have agreed to a transfer.

However, the transcript is incomplete and, as respondent points out, lacks context.  See ECF No.

1029-2 at 3-6.  Even if the court were to assume that the references to "work[ing] something out,"

"pushing people to resolve some of these cases," and whether "the prosecutors in the Eastern

District . . . really need to pursue these particular defendants" are references to working out a

Rule 20 transfer and related specifically to movant, these comments were made by Judge Patel,

not by the United States Attorney for the Northern District.  Id. at 4-6 (Transcript at 60:13-14, 20-

17

1    24; 61:2-4; 62:5-10).  At most, the Assistant United States Attorney for the Northern District

2    affirmed that she would talk with the Eastern District attorneys in response to Judge Patel's

3    urging that she do so, but she made no representation regarding her office's willingness to agree

4    to a transfer.  Id. (Transcript at 60:15-19, 25; 62:11-12, 22-24).

5          Similarly, the fact that the United States Attorney for the Eastern District agreed to a Rule

6    20 transfer for one of movant's codefendants does not indicate that a similar agreement would

7    have been made with regard to movant during the timeframe he states he would have been willing

8    to plead guilty.  Movant's codefendant, Kevin Liu, agreed to plead guilty to his Eastern District

9    charges and transfer his case to the United States District Court for the Central District of

10    California approximately two years prior to movant being found guilty in the Northern District,

11    ECF No. 147, and the Central District Court's docket reflects that Liu also pled guilty to his

12    Central District charges, see United States v. Liu, 2:97-cr-0512 TJH, ECF No. 181.  Given Liu's

13    relatively early pleas in both cases, when the policy grounds of "convenience, interest of justice,

14    prompt administration of justice, and judicial economy" cited by movant were the strongest, the

15    Eastern District attorney's willingness to agree to a transfer for Liu does not clearly indicate a

16    similar willingness to agree to a transfer for movant two years later.

17          Because there is no evidence that both United States Attorneys would have agreed to

18    transfer movant's Eastern District charges to the Northern District, he cannot establish that

19    counsel was ineffective for failing to pursue a transfer under Rule 20 or that the failure to do so

20    caused him prejudice.  Moreover, he cannot establish that he suffered prejudice based on the

21    sentence he received for the reasons already addressed above.

22    IV.    Speedy Trial Rights

23          Movant argues that his Sixth Amendment right to a speedy trial was violated because the

24    ten-year delay between indictment and trial was unreasonable.  ECF No. 1029-1 at 24-28.  He

25    asserts that while some delays were proper, others were not, and points specifically to the

26    government's delay in responding to various pretrial motions, the court's decision to delay

27    resolution of the motions in anticipation of an interlocutory appeal, delay in resuming

28    proceedings after the appeal, administrative confusion, and the government's handling of

discovery.  Id.  He asserts that "the government's actions substantially contributed to nearly 30 months of delay" and that he was prejudiced as a result both presumptively due to the length of the delay and specifically because of the expense and anxiety caused by the delay.  Id. at 27-28.  He further argues that counsel was ineffective because they "agreed to extensions and exclusions of time throughout" instead of seeking "dismissal on Sixth Amendment speedy trial grounds."  Id. at 28.

In response, the government argues that movant's constitutional speedy trial claim is an attempt to work around the fact that he was precluded from claiming a Speedy Trial Act violation because he moved for and stipulated to continuances and failed to move for dismissal under the Act prior to trial.  ECF No. 1041 at 24.  Respondent further argues that the claim must fail because movant "concedes that his attorneys 'agreed to extensions and exclusion of time throughout' the time of his case pending in the Eastern District," the length and reasons for the delays were attributable to movant's own pre-trial motions and interlocutory appeal, and movant fails to corroborate his claims about difficulty obtaining discovery.  Id. at 25.  Respondent further asserts that movant never raised the speedy trial issue in this court or the Ninth Circuit and makes only a conclusory assertion of prejudice.  Id. at 25-26.  Finally, respondent argues that counsels' conduct was well within the range of competence.  Id. at 26.

A.   Legal Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. CONST., amend. VI.  In assessing a claim that a defendant's constitutional right to a speedy trial was denied, the court must weigh four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."  Doggett v. United States, 505 U.S. 647, 651 (1992) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).  None of the factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  Barker, 407 U.S. at 533.  However, "no showing of prejudice

19

1  is required when the delay is great and attributable to the government." <u>United States v. Shell</u>,

2  974 F.2d 1035, 1036 (9th Cir. 1992).

> 3  The length of the delay is to some extent a triggering mechanism.
> 4  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.
> 5  Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

7  <u>Barker</u>, 407 U.S. at 530.

8           B.      <u>Length of Delay</u>

9        "[D]elay is measured from 'the time of the indictment to the time of trial,'" <u>United States</u>

10  <u>v. Gregory</u>, 322 F.3d 1157, 1162 (9th Cir. 2003) (quoting <u>United States v. Sears, Roebuck & Co.</u>,

11  877 F.2d 734, 739 (9th Cir. 1989).  In this case, movant was indicted on August 2, 1996 (ECF

12  No. 1) and his trial did not begin until September 6, 2006 (ECF No. 621).  Accordingly, there was

13  a ten-year delay in bringing movant to trial.  This delay is presumptively prejudicial and therefore

14  requires a further inquiry into the remaining <u>Barker</u> factors. <u>United States v. Mendoza</u>, 530 F.3d

15  758, 762 (9th Cir. 2008) ("Generally, a delay of more than one year is presumptively prejudicial."

16  (citing <u>Gregory</u>, 322 F.3d at 1161-62)).

17           C.      <u>Reason for the Delay</u>

18                   i.      <u>Parties' Positions on Reasons for Delay</u>

19        Movant argues that the government substantially contributed to nearly thirty months of

20  delay in this case, which contributed to the unreasonable ten-year delay in bringing him to trial.

21  ECF No. 1029-1 at 27.  He identifies two specific instances of government conduct that he asserts

22  contributed to the delay.

23        First, movant argues this case was unreasonably delayed when several of his pretrial

24  motions, filed on December 31, 2002, were not decided in a reasonable time. <u>Id.</u> at 24.  He

25  asserts that due to the government's failure to respond in a timely manner, the court's suggestion

26  that briefing on some motions be stayed in anticipation of an interlocutory appeal, and the delay

27  in resuming the case after the interlocutory appeal, the motions took twenty-two months to

28  resolve, when excluding the time for the interlocutory appeal. <u>Id.</u> at 24-26.

Second, movant argues that the case was unreasonably delayed by the government's method of handling discovery.  Id. at 26.  He asserts that because the case relied primarily on discovery being provided through the Northern District, it "trickled in slowly over the years."  Id. at 26.  Then, when Mr. Aye was substituted in as counsel, it took two months for him to begin receiving discovery, some of which he had to obtain from other attorneys, and at a hearing on March 27, 2002, Mr. Aye reported that he still had not received all the discovery.  Id.  He argues that an unrelated hearing on March 13, 2002,[10] revealed that the government had failed to respond to discovery requests.  Id.  He asserts that the seven-month delay in his counsel receiving discovery between August 2001 and March 2002 was unreasonable.  Id. at 27.

In response, the government argues that the delays due to movant's pretrial motions are attributable to movant and that movant has failed to corroborate his claims regarding discovery.  ECF No. 1041 at 25-62.

ii.    Continuances and Motions

The original indictment in this case was filed on August 2, 1996, and charged eleven defendants with sixty-seven counts of money laundering and criminal forfeiture.  ECF No. 1.  A superseding indictment was later filed on July 16, 1998, adding five additional defendants and sixty-three additional counts of money laundering and criminal forfeiture.  ECF No. 98.

On September 24, 1996, counsel for movant filed his first status report.  ECF No. 58.  The report represented that discovery had not yet begun but was expected to be the same as that in Luong I and that the "investigation involved numerous wiretap authorizations in a number of judicial districts spanning a two year period" and involved a "staggering" number of documents.  Id. at 3.  Moreover, all the monitored conversations had been conducted in dialects of Chinese or Vietnamese and final transcripts were not anticipated until Spring of 1997.  Id. at 4.  Movant requested that this case, like Luong I, be deemed complex and that time be excluded under the Speedy Trial Act with a status conference to be held in approximately 120 days.  Id.  A second

---

[10]  Although the motion states the hearing took place on April 10, 2002, the docket does not reflect any hearings taking place on that date and the transcript cited is from the hearing on March 13, 2002.  ECF No. 425.

status report was filed on February 5, 1997, and requested a 120-day continuance and that time

continue to be excluded.  ECF No. 65.  The report represented that there was a general agreement

this case would trail Luong I, that discovery "would be provided through a centralized mechanism

in the Northern District," and that approximately 25,000 pages had been made available so far.

Id. at 1.  It further noted that work on motions related to wiretaps were necessarily on hold

because the transcripts were still being worked upon and that counsel had received a letter from

Northern District prosecutor notifying them that documents specific to the prosecution in this case

were begin made available here.  Id. at 2 n.1.

Similar status reports were filed through March 20, 2001, and provided updates on the

proceedings in Luong I, detailed the extensive amount of discovery, and sought exclusions of

time, largely on the grounds of complexity and counsel's need to prepare for trial, though other

grounds were also identified at times.[11]  In addition to these status reports, declarations regarding

---

[11]  See ECF No. 72 (status report filed June 3, 1997, requesting continuance until at least
December 1997, summarizing proceedings in Luong I, and representing a new indictment had
been filed in the Central District of California with another indictment expected to be filed in the
Southern District of California); ECF No. 79 (status report filed November 26, 1997, requesting
continuance to June 1998, representing that counsel for all parties agreed the case should continue
to trail Luong I, and summarizing developments in Luong I and the Central District case); ECF
No. 86 (status report filed April 7, 1998, requesting two-month continuance based on complexity
and impending superseding indictment and providing updates on Luong I, including that final
transcriptions of the wire intercepts were still not complete); ECF No. 94 (status report filed June
22, 1998, requesting continuance until Fall 1999 in anticipation that trial in Luong I would be
concluded by that time and representing anticipation of superseding indictment adding additional
counts and defendants); ECF No. 159 (status report filed December 15, 1998, reporting updates in
Luong I, including continuance of trial due to substitution of counsel for lead defendant, hearing
on further challenges to wiretaps, and requesting continuance until late-June 1999 after hearing
on wiretap challenges, also reporting production of additional discovery up to bates stamped page
74,489, including some items made up of multiple documents, and need for modification to
protective order as to some discovery to be made available to counsel in Eastern District); ECF
No. 170 (status report filed June 30, 1999 reporting motions hearings in Luong I were ongoing
with closing reply due July 15, 1999); ECF No. 179 (status report filed September 14, 1999,
summarizing status of Luong I, reporting that discovery in Luong I exceeded 100,000 pages and a
subset of discovery relevant to this case (S00001-S0003725) had been produced, and requesting
continuance to April 26, 2000, and exclusion of time as complex; for time to read, investigate,
and digest discovery; and because one defendant had yet to appear); ECF No. 213 (stipulation and
order filed April 26, 2000, continuing status conference from April 26, 2000, to August 16, 2000,
in anticipation of conclusion in Luong I, and exclusion of time as complex; for time to read,
(continued)

22

1    excludable time were filed on September 15, 1999, and April 24, 2000, that were signed by both

2    counsel and movant and that stated that counsel had explained movant's speedy trial rights to him

3    and he consented to time being excluded.  ECF No. 192; ECF No. 207.

4           On March 16, 2001, movant's counsel, Mr. Blackmon, filed a motion to withdraw as

5    attorney of record.  ECF No. 254.  At a status conference held on March 21, 2001, the motion to

6    withdraw as retained counsel was granted, and Mr. Blackmon was appointed to represent movant.

7    ECF No. 268.  Schedules for motions filing and a motion hearing and trial setting date were also

8    set.  Id.  The first set of motions was to be heard and trial was to be set on July 11, 2001, with the

9    second set of motions being heard on December 12, 2001.  Id.

10          On May 16, 2001, movant filed a motion for an order stating that he was not collaterally

11   estopped from relitigating the admissibility of the wire intercepts in this case, which was joined

12   by several of his co-defendants.  ECF Nos. 300, 301, 304, 315, 316.  The motion was denied at

13   the hearing on July 11, 2001.  ECF Nos. 326.  The court also set a further hearing for July 25,

14   2001, to hear counsel's motion to withdraw and ordered movant to be personally present.  Id.

15          On July 20, 2001, Mr. Blackmon filed a motion to withdraw as counsel and on July 25,

16   2001, he was permitted to withdraw as counsel in this case.  ECF Nos. 330, 331.  On August 15,

17   2001, Michael Aye was appointed and a further status conference was set for August 29, 2001.

18   ECF No. 340.

19   ////

20   ———————————

21   investigate, and digest discovery; and because one defendant had yet to appear); ECF No. 225
     (status report filed August 15, 2000, reflecting conviction in Luong I on June 22, 2000, and trial

22   set to begin as to movant and another co-defendant in Central District of California on October
     17, 2000, requesting continuance until after December 5, 2000, when movant was to be sentenced

23   in Luong I and representing that speedy trial rights had been explained to movant); ECF No. 239
     (status report filed January 9, 2001, reporting continuance of sentencing in Luong I, dismissal

24   without prejudice of charges in the Central District, and likelihood of counsel seeking to
     withdraw from representation at next status conference; requesting continuance until after

25   February 2001 when sentencing in Luong I was set to be complete; seeking exclusion of time due
     to complexity and delay from trial on other charges; and representing that speedy trial rights had

26   been explained to movant); ECF No. 257 (status report filed March 20, 2001, stating motion to
     withdraw filed; no objection to co-defendant's request for ninety-day continuance based on

27   complexity, preparation of counsel, and co-defendant in post-trial proceedings in another district;
     and speedy trial rights had been explained to movant).

28

On August 29, 2001, the parties filed a stipulation stating that after discussing the case and issues they had agreed to request the court set this matter for trial after the conclusion of another related case in this district, and that doing so would allow the three newly appointed attorneys sufficient time to review discovery and prepare for trial. ECF No. 346. The government also submitted its preference for grouping the defendants in the event the court ordered the case severed for trial. Id. at 2. On the same date, defendants filed a joint motion for continuance and request for excludable time in which they sought to extend the deadline for filing dispositive motions to March 6, 2002, with a hearing on the motions to be held on May 15, 2002, on the ground that new counsel, including movant's counsel, required an additional six months to review discovery and analyze evidence. ECF No. 347. The motion was signed by both counsel and movant. Id. at 4. At the hearing on that date a further conference was scheduled for November 14, 2001. ECF No. 349.

At the status conference on November 14, 2001, the parties requested that trial setting be continued to December 19, 2001, and time excluded on the basis of Mr. Aye's recent appointment and need for more time to review voluminous discovery. ECF No. 382 (transcript of hearing). A stipulation to that effect—signed by both counsel and movant—was later filed and granted by the court. ECF No. 381. The December 19, 2001 hearing was later dropped from the calendar because trial setting in the related case had been continued and no motions were pending. ECF No. 393.

On January 23, 2002, the government filed a notice of hearing stating that because no additional time had been excluded on December 19, 2001, it had requested the case be placed back on the calendar for the purpose of setting a jury trial. ECF No. 404. The hearing was set for February 6, 2002. Id. In response, movant filed a request to continue the hearing and exclude time until March 27, 2002, on the ground that counsel required additional time to review discovery and prepare. ECF No. 405. A status conference was held on February 6, 2002, at which counsel and defendants, including movant, were present and a joint request to continue trial setting and exclude time was made. ECF No. 413 (conference transcript). The same day, the parties filed a joint stipulation and request to continue the hearing and exclude time to March 27,

2002, that was signed by all counsel and all defendants, including movant.  ECF No. 410.  That stipulation was granted.  ECF No. 409.

On March 27, 2002, the court held a status conference and set two dates for trial:  March 18, 2003, and June 24, 2003.  ECF No. 420.  The government was to designate trial groups by October 30, 2002, and pretrial motions were to be filed by December 31, 2002.  Id.  The October 30, 2002 status conference was later continued to November 6, 2002, at which time John Balazs represented that he had come onto the case two weeks prior as substitute counsel because Mr. Aye had a conflict.  ECF No. 431; ECF No. 433; ECF No. 436 at 7 (Transcript at 2:9-11).  At that time, Mr. Balazs stated that he had obtained all of the discovery Mr. Aye had and estimated that, based on his meetings with Mr. Aye and speaking with other counsel, he would need nine to twelve months to be ready for trial.  ECF No. 436 at 30-31 (Transcript at 25:24-26:5).  A status conference was then set for January 22, 2003.  ECF No. 433.  Mr. Balazs subsequently submitted a declaration and request for excludable time until January 22, 2003, that was also signed by movant and joined by the other defendants and their counsel and was approved by the court.  ECF No. 469.

On December 31, 2002, movant filed a motion to dismiss counts as multiplicitous and a joint motion to suppress wiretap evidence and for reconsideration and clarification of the previous collateral estoppel ruling.[12]  ECF No. 446, 447.  His co-defendant, Mady Chan, filed a motion to dismiss for due process violations, vindictive prosecution, and double jeopardy; a motion to suppress evidence and return seized property; and a motion to dismiss various counts or alternatively for a bill of particulars, while co-defendant Paul Chan filed a motion to suppress wire intercepts.  ECF Nos. 439-444, 448.  Between January 9 and 22, 2003, other defendants joined in the various motions.  ECF Nos. 449-450, 452-454, 460.  On January 17, 2003, movant filed a joint motion with Mady Chan seeking to dismiss the counts against them on due process and double jeopardy grounds.  ECF No. 455.

////

---

[12]  The joint motion was filed jointly by movant, Mady Chan, and Linda Chan.

25

On January 22, 2003, the court held a status conference, at which movant was present, and the trial dates were vacated and a new schedule was set for pretrial motions filing.  ECF No. 456; ECF No. 493 (transcript).  Defendants' pretrial motions were to be filed by August 1, 2003, with oppositions due by September 5, 2003, and replies due September 19, 2003.  Id.  A motions hearing was set for October 1, 2003, at which time a new trial date was to be set.  Id.  The parties were all in agreement as to the schedule and movant's counsel submitted the proposed order setting out the briefing schedule and grounds for excluding time that was later signed by the court.  ECF No. 493 at 18 (Transcript 13:11-14:9); ECF No. 462.

On May 28, 2003, co-defendant Jeanette Hong filed a joinder in all pending and future motions filed by her co-defendants unless she specified otherwise.  ECF No. 467.

On July 2, 2003, the court held a status conference at which movant was present, and after conferring with counsel decided to adhere to the previously ordered schedule.  ECF No. 470.

On August 1, 2003, movant filed a joinder in all motions filed by his co-defendants and made specific additional arguments to the three motions filed by Mady Chan on December 31, 2002.  ECF No. 475.  The same day, Mady Chan filed a joinder in the motion to suppress filed by Paul Chan and movant's motion to dismiss counts as multiplicitous.  ECF No. 476.  John Luong filed motions to dismiss all conspiracy counts and to dismiss certain counts for failing to state a cognizable offense under the money laundering statute, and his motion to dismiss the conspiracy counts was later joined by Danny Leung on September 4, 2003.[13]  ECF Nos. 481-484, 486.  On September 5, 2003, the government moved to extend the response deadline to October 22, 2003, on the grounds that the motions were complex and lead counsel, who was presently on annual leave, had been unable to complete responses by the deadline.  ECF Nos. 487-488.  The accompanying declaration represented that of the defense counsel from whom a response had been received, including movant's counsel, there was no objection to the extension.  ECF No. 488 at 2.  On September 23, 2003, Ping Chan joined in all previously filed motions as they applied to her.  ECF No. 489.

---

[13]  He also filed a motion to dismiss for failure to allege all elements of the essential charged offense which was withdrawn on August 20, 2003.  ECF Nos. 479, 485.

On October 1, 2003, the court held a status conference regarding the pending motions at which movant and his counsel were present. ECF No. 490. At the hearing, the court noted that there were pending motions raising double jeopardy issues and suggested that—based on the likelihood of an interlocutory appeal regardless of the outcome—the double jeopardy motions be heard first and a decision on how to proceed on the other motions be made after the double jeopardy motions were heard. ECF No. 750 at 5-6 (Transcript at 2:18-3:25). After discussion among the parties, they agreed to proceed with briefing on the double jeopardy motions only and defer scheduling of the remaining motions until after the double jeopardy motions were heard. Id. at 7-9 (Transcript at 4:9-6:21). On agreement of the parties, any additional joinders were to be filed by October 8, 2003, the government's opposition was due October 20, 2003, replies were due November 3, 2003, and the motions were to be heard on November 12, 2003. Id. at 8-9 (Transcript at 5:22-6:6).

On October 3, 2003, movant's counsel filed a copy of a letter sent to the government advising that he believed the due process issues would also be immediately appealable and requesting that the government brief those issues as well to avoid a second interlocutory appeal. ECF No. 491. On October 6, 2003, John Luong joined in the double jeopardy motions. ECF No. 492. On November 4, 2003, Jeanette Hong filed a notice that she was not joining in the motions. ECF No. 494. The government then filed a stipulated request to extend the time to respond to November 19, 2003, with replies due December 2, 2003, and hearing on the motion to take place on December 10, 2003, on the ground that the government needed more time to research and prepare its response and that in the past few weeks lead counsel had injured his back and had been unable to finish researching and writing the response. ECF No 496. The stipulation was signed by movant's counsel and granted by the court. Id. The government then filed oppositions to the motions on November 20, and 25, 2003, with movant and Mady Chan filing a joint reply on December 3, 2003. ECF Nos. 497, 499, 500.

The court heard argument on the motions on December 10, 2003, and took the double jeopardy motions under submission. ECF No. 502. The court stated that it would order additional briefing on the due process and failure to state an offense claims if needed, and would

decide all issues together.  ECF No. 520 at 24-25 (Transcript at 22:10-12, 23:19-24).  A status

conference was set for January 28, 2004.  ECF No. 502.  An order denying the motions to dismiss

on all grounds (double jeopardy, due process, and failure to state an offense) was issued on

December 11, 2003.  ECF No. 501.  On December 18, 2003, John Luong filed a notice of appeal

and movant and Mady Chan filed notices of appeal the following day.  ECF Nos. 504, 508, 509.

While the case was on appeal, the court held two status conferences, at which movant was

present, and set a third status conference for June 15, 2005.  ECF Nos. 525, 528.  The Ninth

Circuit dismissed the appeal on March 11, 2005, and the mandate issued on April 7, 2005.  ECF

No. 532.

On June 6, 2005, movant filed a status report requesting that the court set a schedule for

briefing on the remaining motions and identified six motions he believed to still be pending.  ECF

No. 534.  A new briefing schedule was issued at the status conference on June 15, 2005.  ECF

No. 535.  The government was to file oppositions to the pending motions by October 17, 2005,

with replies due November 7, 2005, and a motions hearing on November 30, 2005.  Id.  The

record reflects that prior to agreeing to the government's proposed deadline for responding to the

motions, movant's counsel discussed the matter with him, and though counsel expressed that the

requested deadline was a little longer than he had been thinking of, he acknowledged the motions

were complicated and stated he was fine with the proposed deadline.  ECF No. 751 at 9-10

(Transcript at 6:12-20, 7:11-22).

On September 29, 2005, movant filed a motion to dismiss the criminal forfeiture charge

(count 125), which was joined by Mady Chan on October 13, 2005.  ECF Nos. 538, 539.

On November 16, 2005, the government filed a stipulation, signed by movant's counsel,

to extend the deadline to respond to the pending motions to December 30, 2005, and continue the

hearing date to January 25, 2006, based on the government needing additional time to research

and prepare responses because lead counsel had been on sick leave due to a pinched nerve and

was currently preparing for a three to four week jury trial.  ECF No. 541.  The request was

granted.  ECF No. 545.  On December 30, 2005, the government filed an ex parte motion for a

five-day extension of time to respond to the motions, up to January 4, 2006, on the ground that

lead counsel had been out with a severe case of the flu since December 22, 2005, and unable to work. ECF No. 547. Movant's counsel filed a notice of non-opposition, so long as his deadline to file a reply was also extended by five days. ECF No. 548. Both the response and opposition deadlines were extended. ECF Nos. 549, 550. Oppositions to the motion to dismiss all conspiracy counts and to Paul Chan's motion to suppress wire intercepts were filed on January 4, 2006, and an opposition to the motion to dismiss count 125 was filed on January 6, 2006. ECF Nos. 551, 552, 554.

On January 17, 2006, the government moved to continue the January 25, 2006 law and motion date to March 9, 2005, on the grounds that lead counsel had been unable to work between December 22, 2005, and January 2, 2006, due to having the flu; the government needed time to obtain an archived order from the Northern District related to the motions to suppress evidence; and lead counsel had spent most of November and early December working on an appeal in a related case and had a three to four week trial starting on January 18, 2006. ECF No. 557. The motion was granted and the dates for oppositions and replies were re-set. ECF No. 560. However, at the status conference on January 25, 2006, at which time Mady Chan objected to the continuance, the court took all pending motions under submission and stated decisions would be issued within the week. ECF No. 561; ECF No. 752 at 5 (Transcript at 2:3-21, 5:17-20).

Between January 27, 2006, and February 3, 2006, the court issued orders denying the motion to dismiss counts for failure to allege all elements of the offense, motion to dismiss the conspiracy charges, motion to dismiss the criminal forfeiture charges (counts 125, 126, and 130), motion to dismiss counts as multiplicitous, and motion to suppress wire intercepts. ECF Nos. 563-565, 568, 570. On February 3, 2006, the court ordered defendants to contact the clerk to set a hearing for the motion to suppress. ECF No. 569.

On February 23, 2006, the court held a status conference during which it set a schedule for briefing on the motion to suppress with a hearing scheduled for March 16, 2006, at which time trial was also to be scheduled. ECF No. 573.

On March 16, 2006, the court heard arguments on the motion to suppress and denied the motion without prejudice. ECF Nos. 579-580. Trial setting was continued to March 23, 2006,

with the government to submit a suggested grouping of defendants for trial by March 20, 2006. ECF No. 579.  On March 21, 2006, the government submitted its preference for grouping of defendants for trial and the order of trials.  ECF No. 581.  The defendants were split into two groups with movant and Danny Leung in the first group, which was to be tried first, and recommended trial be scheduled after August 2006, based on Mr. Balazs' representation of when he could be ready for trial.  Id.

On March 23, 2006, trial was set for August 15, 2006 (ECF No. 582), but was later continued to September 6, 2006, on stipulation of the parties based on the need for additional time to prepare for trial (ECF No. 596).  Trial began on September 6, 2006.  ECF No. 621.

iii.    <u>Discovery</u>

On January 12, 2001, the court entered the parties' stipulation regarding the provision of discovery.  ECF No. 247.  The stipulation reflected that movant's counsel had received the Sacramento specific discovery (S00001-S0003725) on July 27, 1999, and that since that date had made the documents available to all counsel.  Id. at 1.  It further stated that all counsel had and continued to have access to all documents generated in <u>Luong I</u> either at the offices of Peter Kmeto, counsel for one of movant's co-defendants, or by personally obtaining the documents.  Id. at 2.

At the hearing on August 15, 2001, Mr. Aye was appointed to represent movant, who was also present in court.  ECF No. 344 at 7 (Transcript at 3:25-4:4).  During that hearing Mr. Aye represented that he had already received some materials from Mr. Blackmon.  Id. at 11-12 (Transcript at 7:23-8:11) (stating that he had received some electronic materials that he had yet to review and had a sufficient volume of paper materials to justify a ninety-day continuance).

At the hearing on November 14, 2001, Mr. Aye represented that he received the "actual physical binders containing discovery" from prior counsel approximately four weeks prior and that there were "at least 20 binders."  ECF No. 382 at 12 (Transcript at 8:8-10).  In addition to the documents from previous counsel he had also put together "another 50 megabytes of electronic data" from various sources.  Id. (Transcript at 8:11-13).

////

30

On March 13, 2002, the court held a status conference, at which neither movant nor his counsel appeared, to discuss billing requests from Mr. Kmeto regarding time spent by a paralegal searching for missing documents.  ECF No. 425 at 3-4 (Transcript 1:11-2:5).  In response to a request for a further description of what the time entailed, the paralegal responded that she had contacted counsel for the government on three separate occasions regarding the missing discovery but had not received a response and had to spend over forty hours searching through records provided by other lawyers because it was apparent that the government would not provide the missing discovery or arrange for her to photocopy it.  Id. at 4 (Transcript at 2:6-16).  Mr. Kmeto also stated that he had sent a letter to the government on December 3, 2001, identifying the missing pages.  Id. at 4-5 (Transcript at 2:23-3:2).

After some discussion regarding how the discovery had been indexed, Mr. Kmeto stated that the Northern District discovery had been in his possession for approximately four years because the court had authorized funds for him to receive a copy of the records, which was then made available to all counsel in this case.  Id. at 9 (Transcript at 7:8-18).  The files were originally easily accessible and subject to a loose checkout system, which appeared to have led to some counsel removing files without returning them. Id. at 9-10 (Transcript at 7:13-8:10).  Upon questioning by the court, Mr. Kmeto acknowledged that it was not the government's fault that he was missing documents, but stated that the government's cooperation would have expedited replacing the missing documents.  Id. at 10 (Transcript at 8:15-23).  The government acknowledged that Mr. Kmeto's requests should have been responded to and that the attorney responsible for discovery, who was no longer on the case, had had health problems during the period at issue and was still not back on a full-time basis.  Id. at 11 (Transcript at 9:3-17).  At the end of the hearing, government counsel stated that if Mr. Kmeto sent over a copying service, the government's copy of the discovery would be made available for copying at his office.  Id. at 18 (Transcript at 16:14-16).

During a trial setting hearing on March 27, 2002, Mr. Aye represented that he had "gone through four bookcases full of binders and discovered in the process of indexing all these things that the majority of the documents I need in this case aren't available yet, and I've put out

1  requests for the things that I need to do this trial with."  ECF No. 424 at 13 (Transcript at 9:7-12).

2                  iv.   Discussion

3          Although movant argues that the ten-year delay in bringing him to trial was unreasonable

4  and that the government unreasonably contributed to twenty-two months of delay attributable to

5  the resolution of pretrial motions and seven months of delay attributable to the provision of

6  discovery, the record does not support this conclusion.

7          As outlined above in the lengthy procedural history of this case, with the exception of the

8  January 17, 2006 motion to continue filed by the government, all continuances in this case were

9  either requested by, stipulated to, or explicitly unopposed by movant through counsel, and in

10  several instances with movant's express personal agreement.  A substantial number of the

11  continuances were based on movant's legitimate requests on the grounds of the undisputed

12  complexity of the case and counsel's need for time to review the extensive discovery and prepare

13  for trial.  Moreover, movant substituted new counsel twice during the proceedings, which further

14  necessitated continuances to allow new counsel to prepare, and filed an interlocutory appeal

15  which deprived this court of jurisdiction for nearly sixteen months.  The court can identify at least

16  six instances throughout the proceedings in which movant himself explicitly agreed to

17  continuances, the first two of which also included an affirmation that counsel had explained

18  movant's speedy trial rights.  See ECF No. 192 (September 15, 1999 declaration); ECF No. 207

19  (April 24, 2000 declaration); ECF No. 347 (August 29, 2001 motion for continuance); ECF No.

20  381 (November 20, 2001 stipulation and order for continuance); ECF No. 410 (February 6, 2002

21  stipulation to continue); ECF No. 469 (June 20, 2003 declaration).  These facts weigh heavily

22  against movant.  See United States v. King, 483 F.3d 969, 976 (9th Cir. 2007) (second Barker

23  factor weighed heavily against finding Sixth Amendment violation where continuances were

24  made at defendant's request, speedy trial rights were explained, case was complex, and new

25  counsel was substituted in halfway through proceedings)

26          With respect to the delay in resolving the pretrial motions, which movant argues is

27  attributable to the government's failure to address the motions in a timely manner, the court's

28  suggestion that briefing on some motions be stayed in anticipation of an interlocutory appeal, and

1   the delay in resuming the case after the interlocutory appeal, the court does not find that this delay

2   tips the scale in movant's favor.

3        As an initial matter, having filed pretrial motions, movant cannot count the entire period

4   the motions were pending as delay attributable to the government even if the government failed to

5   address the motions in a timely manner.  The oldest of the motions at issue were filed on

6   December 31, 2002.[14]  ECF No. 440 (motion to suppress evidence); ECF No. 446 (motion to

7   dismiss counts as multiplicitous); ECF No. 448 (motion to suppress wire intercepts).  At the

8   status conference on January 22, 2003, at which movant was present, a schedule for briefing

9   pretrial motions—including those filed on December 31, 2002—was set by agreement of the

10  parties and a motions hearing was scheduled for October 1, 2003.  ECF No. 493 at 18-19

11  (Transcript at 13:11-14:9).  Since movant was in agreement with the proposed schedule, and

12  benefitted from it by joining in the pending motions of his co-defendants on August 1, 2003 (ECF

13  No. 475), any delay through October 1, 2003, would not be attributable to the government.

14       When the government first moved for an extension of time on September 5, 2003, the

15  record reflects that movant's counsel advised that he had no objection to the requested extension.

16  Similarly, when the government sought another extension pushing the hearing date to December

17  10, 2003, movant's counsel stipulated to the extension.  ECF No. 496.  Movant's counsel having

18  agreed to the extensions, and absent evidence that the request for extension was made for an

19  improper purpose, the court cannot find that this delay weighs against the government.  See

20  United States v. Shetty, 130 F.3d 1324, 1329 (9th Cir. 1997) (no violation of Speedy Trial Act

21  and rejecting defendant's argument "that he was not the moving force behind the granting of the

22  continuance . . . because even when given two direct opportunities to object to a continuance of

23  the trial, the defense voiced no objection and affirmatively represented that the unavailability of a

24  particular witness provided grounds for a finding of excludable time"); cf. Barker, 407 U.S. at

25  ////

26

27  ─────────────────────
    [14]  Two other motions were filed on August 1, 2003, and September 29, 2005.  ECF No. 481
    (motion to dismiss conspiracy charges); ECF No. 538 (motion to dismiss criminal forfeiture

28  charges).

1  531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted

2  heavily against the government.").

3      To the extent movant takes issue with the decision to postpone briefing on the motions

4  that were not immediately appealable and the delays in resuming proceedings after the appeal,

5  these delays also fail to tip the scale in movant's favor.  Though movant attempts to place

6  responsibility on the court for deciding to postpone briefing in anticipation of an interlocutory

7  appeal, the transcript from the October 1, 2003 hearing clearly reflects that the court merely

8  offered that as a suggestion and provided the parties with an opportunity to discuss the matter

9  before coming to a decision.  ECF No. 750 at 5-7 (Transcript at 2:18-4:13).  After discussing the

10 matter, the parties agreed to brief the double jeopardy issues first and defer scheduling on the

11 other motions until after the double jeopardy motions were heard.  Id. at 7-9 (Transcript at 4:9-

12 6:21).  Movant, who was present, voiced no objection, and his counsel explicitly agreed to the

13 decision.  Id. at 9 (Transcript at 6:7-15).  Moreover, even if the two-month delay between the

14 Ninth Circuit's mandate and the resumption of proceedings in this case[15] could be attributed to

15 some failure of the court or the government, there is no evidence that the delay was the result of

16 anything other than negligence and that brief delay cannot overcome the weight of the delay

17 caused by movant's conduct.

18      With respect to delays in resolving the motions after the conclusion of movant's appeal,

19 the record reflects that movant's counsel discussed the new briefing schedule with him prior to

20 agreeing to the schedule proposed by the government.  ECF No. 751 at 9-10 (Transcript at 6:12-

21 20, 7:11-22).  Moreover, during the time briefing on the motions was pending, movant filed

22 another motion to dismiss.  ECF No. 538 (September 29, 2005 motion to dismiss forfeiture

23 counts).  Movant then stipulated to the government's first request for an extension of time to

24 continue the deadlines and filed a notice of non-objection to the second motion for extension.

25 ECF Nos. 541, 548.  Although the government ultimately failed to respond to some of the

26 ──────────────

27 [15]  Movant argues delay from the date the Ninth Circuit issued its order dismissing the appeal. ECF No. 1029-1 at 25.  However, the appeal was considered pending, and jurisdiction did not return to this court, until the mandate entered on April 7, 2005.  United States v. Pete, 525 F.3d

28 844, 850-51 (9th Cir. 2008).

1    pending motions, there is no indication that the requests for extension were made to purposely

2    delay proceedings or hamper the defense.  See Barker, 407 U.S. at 531.

3        Movant also did not raise any objection to the government's request to continue the

4    January 25, 2006 motions hearing, and though the court initially granted the motion, it ultimately

5    deemed all motions submitted at the January 25, 2006 status conference after one of movant's co-

6    defendant's raised an objection to any further continuances.  ECF No. 561; ECF No. 752 at 5

7    (Transcript at 2:3-21, 5:17-20).  Movant argues that the court assumed responsibility for the delay

8    in resolving the motions, but this takes the court's statement out of context.[16]   It is clear from the

9    transcript that no one present was discussing the immediate status of the matter in the larger

10   context of the case's comprehensive procedural history, other than the acknowledgment that no

11   one had objected to the continuances.  See ECF No. 752 at 5-8 (Transcript at 2:21-5:21).  The

12   record reflects that the motions were set for hearing and continued at the parties' agreement and

13   that, as counsel all noted at the hearing, no one had objected to the continuances.

14       Finally, movant argues that the government caused a seven-month delay in counsel's

15   receipt of discovery between August 2001 and March 2002, but this contention is not supported

16   by the record.  The record reflects that as of January 12, 2001, movant's counsel, Mr. Blackmon,

17   had a full copy of the Sacramento-specific discovery, and a copy of all documents generated in

18   Luong I was available at Mr. Kmeto's office for defendants to obtain.  ECF No. 247.  Moreover,

19   contrary to movant's claim that Mr. Aye did not begin receiving discovery until two months after

20   he substituted in (ECF No. 1029-1 at 26), the record reflects that he had already received some

21   discovery as of the date of his appointment.  ECF No. 344 at 11-12 (Transcript at 7:23-8:11)

22   (stating that he had received some electronic materials that he had yet to review and had a

23   sufficient volume of paper materials to justify a ninety-day continuance).  It is further unclear

24   how the government would be responsible for delays in Mr. Aye receiving discovery from

25   movant's former counsel.

26   ////

27

28   [16]  The court stated that "[i]f you noticed this for hearing and I didn't hear it, that's the Court's
fault."  ECF No. 752 at 7 (Transcript at 4:11-12).

With respect to Mr. Aye's statement on March 27, 2002, "that the majority of the documents I need in this case aren't available yet," he does not identify what discovery he still required or state that the government was at fault for the lack of availability.  ECF No. 424 at 13 (Transcript at 9:7-12).  As for the hearing on March 13, 2002, where Mr. Kmeto asserted that documents were missing, Mr. Kmeto specifically acknowledged that it was not the government's fault and indicated that the missing documentation was due to the lax checkout policies that had previously been in place.  ECF No. 425 at 9-10 (Transcript at 7:13-8:23).  Even if the court assumes that the government was negligent in responding to Mr. Kmeto and assisting him in replacing the missing documents, there is no indication that any of the missing documents were relevant to movant or that his counsel did not already have his own copy.

v.    Conclusion

Because the delays in this case were either requested by or agreed to by movant and there is no evidence of improper motive or negligence on the part of the government, the cause of the delay weighs against movant in this case.  See Barker, 407 U.S. at 529 ("if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine"); Vermont v. Brillion, 556 U.S. 81, 92-93 (2009) (counsel's failure "to move the case forward" attributable to movant regardless of whether counsel is retained or appointed).

D.    Assertion of Speedy Trial Right

Movant does not identify—nor has the court been able to locate—any instance in the record where he asserted his right to a speedy trial.  However, as discussed above, the record shows movant sought numerous continuances and assented to those sought by the government.  This factor therefore weighs heavily against movant.  See Barker, 407 U.S. at 531-32 ("The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.  We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."); Dogget, 505 U.S at 653 (had defendant known about indictment for years before arrest, "Barker's third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him"); United States v. Aguirre, 994 F.2d 1454, 1457 (9th Cir. 1993) ("The Speedy Trial Clause

1    primarily protects those who assert their rights, not those who acquiesce in the delay—perhaps

2    hoping the government will change its mind or lose critical evidence.").

3              E.     Prejudice

4         The Sixth Amendment's speedy trial right was meant "(i) to prevent oppressive pretrial

5    incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility

6    that the defense will be impaired." Barker, 407 U.S. at 532.  "Of these forms of prejudice, 'the

7    most serious is the last, because the inability of a defendant adequately to prepare his case skews

8    the fairness of the entire system.'" Doggett, 505 U.S. at 654 (quoting Barker, 407 U.S. at 532).

9    The Supreme Court has generally recognized "that excessive delay presumptively compromises

10   the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett,

11   505 U.S. at 655.  However, "such presumptive prejudice cannot alone carry a Sixth Amendment

12   claim without regard to the other Barker criteria," though "its importance increases with the

13   length of delay." Doggett, 505 U.S. at 656.  Regardless, the court "should presume prejudice

14   only if the defendant isn't responsible for the delay." Aguirre, 994 F.2d at 1458 (no entitlement

15   to presumption of prejudice for five-year delay between indictment and arrest where government

16   was not negligent and defendant knew about charges and could have contacted authorities as he

17   had promised to do); United States v. Wilson, 843 F. App'x 889, 891 (9th Cir. 2021) (no

18   entitlement to presumption of prejudice for six-and-a-half-year delay from indictment to

19   extradition request where defendant knew about charges against him for at least four and up to six

20   years prior to initiation of extradition and could have avoided delay by voluntarily presenting

21   himself to authorities).

22        Despite movant's attempts to lay the blame for the delay on the government and the court,

23   the record does not support such a finding.  As outlined above, the delays in this case are almost

24   entirely attributable to continuances requested by movant—including those necessitated by two

25   substitutions of counsel—and movant's motion practice and interlocutory appeal.  Where

26   continuances were requested by the government, movant acquiesced to those extensions.  Finally,

27   there is no evidence that movant attempted to exercise his speedy trial rights prior to filing the

28   instant § 2255 motion.  For these reasons, the court is unable to find that movant is entitled to a

1  presumption of prejudice.  See United States v. Tanh Huu Lam, 251 F.3d 852, 859 (9th Cir. 2001)

2  (where defendant "is responsible for the delay in his trial, he bears the burden of demonstrating

3  actual prejudice under the fourth Barker criterion" (citation omitted))

4        Even if movant were entitled to a presumption of prejudice, it would be overcome because

5  the second and third Barker factors weigh so heavily against him.  See Doggett, 505 U.S. at 656

6  ("presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other

7  Barker criteria"); King, 483 F.3d at 977 (though movant was not required to make "affirmative

8  demonstration of prejudice," he could not "rely solely on the mere 'passage of time'" (citations

9  omitted)); Aguirre, 994 F.2d at 1457-58 (1993) (finding that "a five year delay is long enough to

10  trigger a further look," but concluding that even the five-year delay in that case did not deprive

11  the defendant of his constitutional right to a speedy trial when all of the Barker factors were

12  balanced).

13        Movant has also failed to identify any actual prejudice that he suffered as a result of the

14  delay, such as lost witnesses or evidence.  With respect to any impairment to movant's liberty, the

15  record shows that prior to his conviction in Luong I, movant was released on bail and permitted to

16  work—and would have been in the same position regardless of the proceedings in this case

17  because of the ongoing proceedings in Luong I—and he has identified no ways in which he

18  suffered additional restraints on his liberty as a result of the ongoing proceedings in this case.

19  After his conviction in Luong I, movant began serving his Northern District sentence and

20  therefore suffered no impairment to his liberty after that time.

21        F.    Conclusion

22        Although the delay in this case was substantial, movant has failed to demonstrate that the

23  government was more to blame than he was for any delay in bringing him to trial, that he asserted

24  his right to a speedy trial before the trial court, or that he suffered any prejudice as the result of

25  delay.  See Barker, 407 U.S. at 530.  Movant also fails to come forward with any evidence that

26  his trial date was continued over the objection of his counsel or any other defense counsel, that

27  any delay in bringing the case to trial was for any improper purpose, or that the prosecution

28  intentionally or improperly sought to lengthen the proceedings against him.  See Barker, 407 U.S.

at 529, 531 ("if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine" but "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.").  Accordingly, movant has failed to demonstrate that delay in bringing his case to trial violated his right to a speedy trial under the Sixth Amendment.  See Aguirre, 994 F.2d at 1457-58 (1993) (finding that "a five year delay is long enough to trigger a further look," but concluding that even the five-year delay in that case did not deprive the defendant of his constitutional right to a speedy trial when all of the Barker factors were balanced).

To the extent movant argues that counsel was ineffective in agreeing to extensions and exclusions of time rather than seeking dismissal on speedy trial grounds, his claim lacks factual support and his conclusory assertion fails to establish that counsel's conduct was objectively unreasonable.  Movant has not identified what specific continuances were unreasonable or why, and such conclusory assertions do not entitle him to relief.  See Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989) (vague or conclusory claims without supporting factual allegations warrant summary dismissal of § 2255 motion).

## V.    Conclusion

For the reasons explained above, the files and records of this case conclusively demonstrate that movant is not entitled to relief.  See 28 U.S.C. § 2255(b).  Furthermore, the issues raised in movant's § 2255 motion do not warrant an evidentiary hearing as the allegations can be decided based on the existing record.  See United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) ("The district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief."); Quan, 789 F.2d at 715 (no evidentiary hearing required where motion "presents no more than conclusory allegations, unsupported by facts and refuted by the record").

IT IS HEREBY RECOMMENDED that:

1. Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1029) be DENIED; and

////

2.  The Clerk of the Court be directed to close the companion civil case No. 2:17-cv-1982 WBS AC.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

If movant files objections, he may also address whether a certificate of appealability should issue and, if so, why and as to which issues.  Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

DATED: August 24, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE